UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 06-305 (DSD/JSM)

     Plaintiff,

v.                                           REPORT AND RECOMMENDATION

DERRICK BUCKS,

     Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant's Motion to Suppress Statements [Docket No. 18]; Motion to Suppress Evidence [Docket No. 19]; and Motion to Suppress Evidence Seized After Arrest [Docket No. 24].  Assistant United States Attorney Andrew Winter appeared on behalf of the Government.  Craig Cascarano, Esq. appeared on behalf of defendant Derrick Bucks, who was personally present.

Based upon the pleadings, testimony taken from Investigator Bart Hauge, exhibits submitted at the hearing, and pre-hearing submissions,[1] it is recommended that:

    1.    Defendant's Motions to Suppress Statements [Docket No. 18] be **DENIED**.

    2.    Defendant's Motion to Suppress Evidence [Docket No. 19] be **DENIED**.

---

[1]    The Court had given the parties permission to submit post-hearing written submissions in support of their positions relating to defendant's motions to suppress. However, the parties subsequently notified the Court that they no longer wished to provide any further written submissions.

      3.      Defendant's Motion to Suppress Evidence Seized After Arrest [Docket No. 24] be **DENIED**.

## I.    FACTUAL BACKGROUND

On September 7, 2005, law enforcement officers executed a search warrant at a residence located on Newton Avenue North in Minneapolis, Minnesota.  <u>See</u> Govt. Ex. 1 (Search Warrant, Application and Affidavit for Newton Avenue North residence).  During the search, law enforcement officers discovered, among other items, an assault rifle with ammunition, gun ammunition, handguns, currency, baggies of suspected heroin, and two baggies containing what appear to be crack cocaine.  <u>Id.</u>

Almost a year later, on August 22, 2006, law enforcement officers executed a search warrant at a different residence located at Thomas Avenue North, Minneapolis, Minnesota.  <u>See</u> Govt. Ex. 2 (Search Warrant, Application and Affidavit for Thomas Avenue North residence).  During the search, law enforcement officers discovered, among other items, currency, a baggie of suspected cocaine, and a baggie of crack cocaine.  <u>Id.</u>

At the hearing, Investigator Bart Hauge testified that during the execution of the Thomas Avenue North search warrant, one of the occupants of the residence, a cooperating defendant, gave law enforcement officers information regarding defendant's drug activities, including that defendant was the source of the cocaine found at the residence.  In addition, the cooperating defendant stated that he or she had been at a residence located on Lyndale Avenue North earlier in the day and had observed kilogram quantities of cocaine and some crack cocaine belonging to defendant.  <u>See</u> Govt. Exs. 3 (Search Warrant, Application and Affidavit for Lyndale Avenue North

residence).   According to Investigator Hauge, the cooperating defendant also told law enforcement officers that defendant would be driving either a Cadillac or a Dodge Intrepid.   Investigator Hauge stated on cross-examination that the cooperating codefendant had no history of being an informant for police and he did not know whether the individual had any prior narcotics convictions.   Investigator Hauge also testified that a CRI made controlled buys from the Lyndale Avenue North residence within a month prior to August 22, 2006; however, he could not state with certainty from whom the buys were made.

Based on this information, on the morning of August 22, 2006, police officers stopped defendant in a Cadillac that he was driving shortly after he left the Lyndale Avenue North residence identified by the cooperating defendant.   Police did not have an arrest warrant for defendant.   Further, Investigator Hauge testified that after defendant had been arrested, he learned that defendant had received a cell phone call from an unidentified individual telling him that the Thomas Avenue North residence had been raided by police, and that defendant had been observed driving towards this location when he was stopped by police.   Defendant voluntarily participated in a custodial post-Miranda interview with law enforcement officers, which was terminated when defendant became evasive with officers.

On the same day that defendant was arrested, law enforcement officers executed a search warrant issued for the Lyndale Avenue North residence.   See Govt. Ex. 3.   During the search, law enforcement officers discovered, among other items, marijuana, ammunition, currency, suspected crack cocaine, firearms, suspected cocaine, and a bag of suspected heroin.   Id.

On August 22, 2006, law enforcement officers also executed a search warrant issued for a 1999 Dodge Intrepid, Minnesota License Plate LAUXXX, located in the garage of the Lyndale Avenue North residence.   A confidential reliable informant had communicated to police that defendant often kept narcotics in traps or hides inside this vehicle.   <u>See</u> Govt. Ex. 4 (Search Warrant, Application and Affidavit for the 1999 Dodge Intrepid, Minnesota License Plate LAUXXX).   During the search, law enforcement officers discovered, among other items, firearms and ammunition inside the traps of the vehicle.

Finally, on August 22, 2006, law enforcement officers executed another search warrant for a 1999 Dodge Intrepid, Minnesota License Plate TDLXXX located in the driveway of the Lyndale Avenue North residence.   During the search, law enforcement officers discovered, among other items, two firearms.   <u>See</u> Govt. Ex. 5 (Search Warrant, Application and Affidavit for the 1999 Dodge Intrepid, Minnesota License Plate TDLXXX).

On September 19, 2006, an Indictment [Docket No. 8] was returned against defendant charging him with one count of Conspiracy to Distribute and Possess With Intent to Distribute Crack in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); one count of Possession With Intent to Distribute a Controlled Substance – crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(2); one count of Possession of a Firearm in furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 824(c)(1)(A); Conspiracy to Possess Firearms During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(o); and one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## II.  MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO COURT ISSUED WARRANTS

Defendant has challenged the searches and seizures conducted pursuant to court-issued warrants of three residences and two vehicles.  At the hearing on the pretrial motions, the parties stipulated that defendant's motion to suppress evidence obtained from the five search warrants should be decided solely on the four corners of the search warrant applications.  As such, the only issue presented to the Court is whether probable cause existed on the face of each of the search warrant applications to support the issuance of the warrants.[2]

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  Illinois v. Gates, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

---

[2]     In defendant's motion to suppress filed by defendant's former counsel, Gary R. Bryant-Wolf, defendant only challenged the search warrants issued for the Lyndale Avenue North residence and two Dodge Intrepids.  The basis of that challenge was that the search warrants lacked probable cause and the Lyndale Avenue North warrant was also improperly issued as no-knock search.  However, plaintiffs' present counsel, Craig Cascarano, only challenged the warrants as lacking probable cause based on the four corners of each warrant.  This Court notes that even if defendant had challenged the seizure of items made from the Lyndale Avenue North based on the alleged impropriety of the no-knock warrant, this Court would have denied defendant's motions to suppress evidence.  See Hudson v. Michigan, 126 S.Ct. 2159, 2165 (2006) ("What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant.  Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable.").

2a7de2e67d6d1270

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238.  In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed.  <u>Id.</u> at 238-39 (citation omitted); <u>see</u> <u>also</u> <u>United States v. LaMorie</u>, 100 F.3d 547, 552 (8th Cir. 1996) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge." (citation omitted)).   As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005) (citing <u>United States v Etheridge</u>, 165 F.3d 655, 656 (8th Cir. 1999), quoting <u>United States v. Gladney</u>, 48 F.3d 309, 312 (8th Cir. 1995)).

Given this standard of review, the Court will now proceed to determine whether the search warrants at issue in this case are supported by probable cause.[3]

---

[3]    This Court notes that there is no connection between defendant and any of the information contained on the face of the search warrants, supporting affidavits, or the items listed in the inventory lists for the Newton Avenue North and Thomas Avenue North residences.  Further, defendant failed to present any evidence that he has standing to challenge the searches at these residences.  As such, even if this Court would have found that the search warrants for these two residences lacked probable cause, it would have denied defendant's motion to suppress these two search warrants

A.    September 6, 2005 Search Warrant for Newton Avenue North Residence

The warrant at issue was applied for by FBI Special Agent Jean E. LaPlace, Jr. and signed by United States Magistrate Judge Arthur J. Boylan, on September 6, 2005, and executed on September 7, 2005.   The warrant sought controlled substances, including cocaine and crack cocaine; records and documents related to the transportation, ordering, distribution, sale of or disposition of proceeds from the sale of narcotics; records evidencing the obtaining, secreting, transfer, concealment, or expenditure of money; currency and financial instruments; materials used in the distribution of controlled substances; firearms and ammunition; and items of identification to establish residency at the premises to be searched and constructive possession of the items that were the object of the search.   See Govt. Ex. 1.   The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- During the investigation, a Confidential Reliable Information ("CRI") advised law enforcement officers that a member of the Vice Lords Gang, Renardo Smith ("Smith") was selling quantities of crack cocaine in the Minneapolis area.

- During the week of August 22, 2005, the CRI, acting under the direction and supervision of law enforcement officers, made telephonic contact with Smith. During this conversation, Smith agreed to sell the CRI approximately an ounce of crack cocaine and arranged for a time and place to meet.

---

based on a lack of standing by defendant to challenge the searches.  See United States v. Kiser, 948 F.2d 418, 423 (8th Cir. 1991) (string citation omitted) (finding that a defendant "bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search and seizure."); see also United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995) (finding that a defendant has burden of proving a legitimate expectation of privacy in the place or thing searched before defendant can challenge the search); United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994) ("The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched.") (citation omitted).

- An hour prior to the arranged controlled buy, officers set up surveillance at the Newton Avenue North residence.  Officers observed a Black Chevrolet Caprice bearing a Minnesota license plate parked in front of the garage of the residence with two occupants.  The garage had the same numbers next to the garage door as the suspect residence.  In addition, the color of the garage matched the color and trim of the house.  The Caprice was observed leaving the alley of the  Newton Avenue North  residence and driving towards the prearranged location.  The officers conducting surveillance observed the Caprice engaging in counter-surveillance driving techniques.

- Subsequently, the CRI met with the two occupants of the Caprice at the pre-designated meet location, and Smith sold a quantity of crack cocaine to the CRI for an amount of pre-recorded Government buy funds.  Immediately following the transaction, the CRI met with law enforcement officers and provided them with the suspected crack cocaine.  The crack cocaine tested field positive for crack cocaine.

- During the week of August 29, 2005, the CRI, acting under the direction and supervision of law enforcement officers, made telephonic contact with Smith.  During this conversation, Smith agreed to sell the CRI a quantity of crack cocaine and arranged for a place to meet.

- Prior to the arranged controlled buy, officers set up surveillance at the Newton Avenue North residence.  Officers observed the Caprice backing out the garage of the suspect residence with only one occupant.  The Caprice drove directly to the pre-designated meeting place for the controlled buy.

- The CRI met with Smith at the pre-designated meet location, and Smith sold a quantity of crack cocaine to the CRI for an amount of pre-recorded Government buy funds.  Immediately following the transaction, the CRI met with law enforcement officers and provided them with the suspected crack cocaine.  The suspected crack cocaine tested field positive for crack cocaine.

- On or about August 30, 2005, Minneapolis police officers conducted a traffic stop of the Caprice. Smith, Parris Patton, Marcus White, and Jonard McDaniel were all occupants of the Caprice.  A protective sweep of the vehicle produced a .45 Glock semi-automatic handgun with an extended a magazine located under the passenger seat of the vehicle.

Id.

Given all of this information, a reasonable person could conclude that there was

evidence of a crime located at the  Newton Avenue North  residence.  The Affidavit set

forth facts establishing drug-dealing activities and tied them to this residence.   In particular, the supporting affidavit contains information that Smith, on two separate occasions, was parked outside of the garage or backed out of the garage located at the Newton Avenue North residence in a black Caprice, and then traveled to a predetermined location and sold narcotics to the CRI.  As to firearms and ammunition, the black Caprice yielded a .45 Glock semi-automatic handgun with an extended a magazine.  This information, coupled with the fact that firearms are recognized tools of the drug trade, would allow reasonable person to conclude that there was evidence of firearms at the suspect residence.  See generally, United States v. Hellbusch, No. 94-2356, 1995 WL 94714 at *1 (8th Cir. Mar. 9, 1995) (finding given that guns are tools of the drug trade).    Therefore, based upon the totality of the circumstances, this Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the items described at the Newton Avenue North residence.  On this basis, this Court recommends that defendant's motion to suppress the search of the Newton Avenue North residence be denied

**B.    August 21, 2006 Search Warrant for Thomas Avenue North Residence**

The warrant at issue was applied for by Special Agent LaPlace and signed by United States Magistrate Judge Janie S. Mayeron, on August 21, 2006, and executed on August 22, 2006.  This warrant sought controlled substances, including cocaine, crack cocaine, marijuana, and heroin; records and documents related to the transportation, ordering, distribution, sale of or disposition of proceeds from the sale of narcotics; records evidencing the obtaining, secreting, transfer, concealment, or expenditure of money; currency and financial instruments, materials used in the

distribution of controlled substances; firearms and ammunition; items of identification to establish residency at the premises to be searched and constructive possession of the items that were the object of the search; cellular telephones; and photographs.  See Govt. Ex. 2.  The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- A DEA Task Force Officer communicated that he received information from a Confidential Informant that Chauncey Jackson ("Jackson"), a confirmed Vice Lord gang member according to the Minnesota Gang Net (a database of gang members in the State of Minnesota), had been selling two and a half ounces of powder cocaine a day for the past four weeks from the Thomas Avenue North residence.

- Jackson was arrested on June 7, 2006 for felon in possession of a firearm and communicated to Special Agent LaPlace that he was at the suspect residence two days prior to the interview, and that the residence was a Vice Lord house.  Jackson further stated that he had observed two kilograms of cocaine at the residence two days before the interview.

- Within the two past weeks, law enforcement officers had received information that the occupants of the Thomas Avenue North residence were selling large amounts of cocaine.  While the source of the information did not know the names of the individuals selling the cocaine, he or she observed an unknown individual leaving the residence with approximately two ounces of cocaine.  In addition, the source provided that he or she had observed nine ounces of cocaine in the residence after the unknown person left the residence.

- On August 18, 2006, LaPlace conducted a trash search at the Thomas Avenue North residence.  During the search, LaPlace located several baggies that contained suspected cocaine residue and mailings with the address of the suspect residence.

- LaPlace had the baggies containing the suspected cocaine residue to be tested for the presence of drugs.  The chemist at the City of Minneapolis Health Department Laboratory tested one of the recovered baggies, and the baggie tested positive for the presence of cocaine.

Id.

Given all of this information, a reasonable person could conclude that evidence of narcotic activities could be found at the Thomas Avenue North residence.   In

particular, the Affidavit set forth that law enforcement officers had received recent information from two informants, and an arrested Vice Lords gang member, that drug activity was a occurring at the Thomas Avenue North residence.  In addition, the search of the suspect residence's garbage yielded mail that had the same address as the suspect residence, and a baggy with a residue that tested positive for the presence of cocaine.  These facts provide fair probability that contraband or evidence of a crime involving drugs would be found on the suspect property.  Therefore, defendant's motion to suppress as it relates to the August 21, 2006 search warrant for the Thomas Avenue North residence should be denied.

**C.    August 22, 2006 Search Warrant for Lyndale Avenue North Residence**

The warrant at issue was applied for by Minneapolis Police Officer John Biederman and signed by Hennepin County District Judge Patricia L. Belois, on August 22, 2006, and was executed on the same day.   This warrant sought controlled substances, including cocaine and crack cocaine; firearms and other weapons; gun paraphernalia; proceeds from the sale of narcotics; documents and other media that documented criminal, narcotic, or gang activity; evidence that would establish residency or standing at the suspect residence; evidence that would establish ownership or responsibly of the an automobile, cell phone, or weapon; and electronic goods used in the sale of narcotics, such as cellular telephones and scales.   See Govt. Ex. 3. Defendant's challenges to the state search warrants in this case center on what he claims to be a failure by the Affidavit to set forth the reliability of the informants from whom information was obtained, the staleness of the information provided by the informant (the Affidavit did not state when the controlled buys were made by the CRI

from defendant at the Lyndale Avenue North residence), and the failure of the affiant to set forth facts corroborating the information provided by the informants.   See Memorandum of Law in Support of Motion [sic] Suppress Evidence Seized via the State Search Warrants at p. 2.

The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- On August 22, 2006 at approximately 7:00 a.m., the FBI executed a search warrant on the Thomas Avenue North residence.  During the search, one of the occupants of the residence stated that a few hours prior, he or she had seen kilogram quantities of cocaine, some of which was crack cocaine, and a Glock handgun in the Lyndale Avenue North residence.

- The occupant also stated that the cocaine located at the Lyndale Avenue North residence belonged to defendant.

- Defendant is a known Vice Lord gang member with a criminal history that included arrest and convictions for weapons and narcotics violations, domestic assault, and felony assault.

- A CRI stated defendant kept narcotics in traps or hides in his Dodge Intrepid, Minnesota license plate LUAXXX, which was usually kept in the garage of the Lyndale Avenue North residence.

- The CRI made controlled buys from the Lyndale Avenue North residence as a part of a DEA investigation and communicated that he had seen a .223 caliber rifle located at the address.

- During the morning, officers stopped an automobile, Minnesota license plate TACXXX, driven by defendant, as it left the Lyndale Avenue North residence.

See Govt. Ex. 3.

As a preliminary matter, this Court rejects any suggestion that the Affidavit lacked any reference to the reliability of the CRI, given that the Affidavit explicitly provided that the CRI had participated in a DEA investigation, which involved the controlled buys from defendant.  See Govt. Exs. 3-5.  With respect to the occupant of the Thomas Avenue

North residence, while this person was not an established confidential reliable informant, this does not mean that the information provided by this person cannot contribute to a finding of probable cause.[4]  The credibility and reliability of an informant are not "separate and independent requirements to be rigidly exacted in every case." Gates, 462 U.S. at 230.  The totality of the circumstances standard set forth in Gates permits, "for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability."  United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) (emphasis added).  In this case, the Affidavit set forth that the occupant had been in the suspect residence earlier in the day and had observed kilogram quantities of cocaine, some of which was crack cocaine, and a Glock handgun.  The  information provided by the occupant was timely and based on first-hand observation, and it is clear that he or she had a basis of knowledge regarding the alleged crimes.

In addition, the Affidavit demonstrates that the occupant's tip was credible and reliable in that he or she conveyed the information in person to law enforcement.  See Solomon, 432 F.3d at 827 (citing Florida v. J.L., 529 U.S. 266, 270 (2000)) (explaining that "a known informant . . . can be held responsible if her allegations turn out to be fabricated."); see also Adams v. Williams, 407 U.S. 143, 146-47 (1972) (finding that the credibility of the informant is enhanced when the informant is subject to immediate

---

[4]     This Court notes that defendant attempted to undermine the credibility of the informant by suggesting that he or she may have been involved with illegal narcotics. However, the mere fact that informants may have a criminal history does not negate the reliance of judge on the information provided by them in determining whether probable cause exists to issue a warrant.  See generally, United States v. King, 351 F. 3d 859, 868 (8th Cir. 2003) ("We do not dispute that it was quite likely that Kingsley's character was flawed, but we recognize, like the magistrate judge did, that the use of unsavory informants is quite often the nature of the beast in police investigations.").

arrest for making a false complaint).   Providing the tip in person allowed law enforcement to assess the credibility of the occupant.  See Solomon, 432 F.3d at 827-28 (citing United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002); LaMorie, 100 F.3d at 553 ("[P]ersonal contact with an informant can strengthen an officer's decision to rely on the information provided. . . .")).

This Court also notes that the information from the occupant was partially corroborated in that he or she had stated that defendant kept drugs at the Lyndale Avenue North residence and the affidavit set forth that police had stopped defendant after he left this residence.  "The corroboration of minor, innocent details can suffice to establish probable cause."  United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987)); see also United States v. McBride, 801 F.2d 1045, 1047 (8th Cir. 1986) ("even in cases involving the higher degree of reliability needed to establish probable cause, it is immaterial that the details corroborating an informant's tip are as consistent with innocent conduct as with illegal activity"), cert. denied, 479 U.S. 1100 (1987); United States v. Morales, 923 F.2d 621, 625 (8th Cir. 1991) ("[T]he 'corroboration of minor, innocent details can suffice to establish probable cause' [and] the corroboration of the tip's 'innocent' details made it reasonable to believe that descriptions of [the defendant's] illegal activities were accurate.") (citations omitted); Reivich, 793 F.2d at 960 ("it is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details").

In summary, the contemporaneous information provided in person to law enforcement officers by the occupant of the Thomas Avenue North residence to the

presence of illegal drugs and firearms in the Lyndale Avenue North residence, coupled with the CRI's controlled buys from defendant at the residence,[5] the CRI's statement that defendant hid drugs in an automobile that was usually kept in the garage of the residence, and that he or she observed a firearm at the residence, provided fair probability that contraband or evidence of a crime involving drugs and firearms would be found at the Lyndale Avenue North property.   Therefore, defendant's motion to suppress, as it relates to the August 22, 2006 Search Warrant for Lyndale Avenue North should be denied.

**D.    August 22, 2006 Search Warrant for a 1999 Dodge Intrepid, Minnesota License Plate LAUXXX**

The warrant at issue for the 1999 Dodge Intrepid, Minnesota License Plate LAUXXX was applied for by Officer Biederman and signed by Hennepin County District Judge Patricia L. Belois, on August 22, 2006, and was executed on the same day.  This warrant sought controlled substances; proceeds from the sale of narcotics; drug paraphernalia; weapons or gun-related paraphernalia; documents and other media that document criminal, narcotic, or gang activity; and evidence that would establish standing, ownership, or responsibility of an automobile, cell phone, weapons, or other locations; and electronic goods, such as cellular telephones and scales.  See Govt. Ex. 4.  The Affidavit that is the basis for the search warrant for the impounded 1999 Dodge Intrepid incorporates the facts set forth in support of the search warrant issued for the residence searched on August 22, 2006, as identified in Government Ex. 3.  Additional

---

[5]    This Court notes that even if law enforcement officers would have included that the controlled buys by the CRI from the Lyndale Avenue North Residence had occurred within a month of August 22, 2006 search warrant, this time period does not make this information stale for the purposes of making a finding of probable cause for the reasons stated forth in this Section III of this Order, infra.

relevant portions of the Affidavit accompanying the search warrant described the basis

for the warrant as follows:

- The search warrant for the Lyndale Avenue North residence had been executed. A large amount of cocaine, several gun magazines consistent with those used by AR15s or M16 .223 caliber rifles, and a Glock handgun were found at the residence.

- A 1999 Dodge Intrepid, Minnesota License Plate LAUXXX, was located in the garage of the suspect residence on August 22, 2006. The vehicle was towed to the Minneapolis impound lot where a canine trained in narcotics detection indicated that there was an odor of narcotics in the suspect vehicle.

<u>See</u> Govt. Ex. 4.

The Affidavit set forth facts establishing that law enforcement, pursuant to a

search warrant, had discovered a large amount of cocaine, ammunition, and a handgun

at the property from which the automobile had been towed. The vehicle had been

parked in the garage of the residence. A CRI had provided information that he or she

had made controlled buys from defendant at this residence, that defendant kept this car

in the garage at the residence, and that defendant hid narcotics in this vehicle. In

addition, the Affidavit tied defendant to the residence and suspect vehicle by virtue of

law officer's stop of defendant as he left the residence. Finally, the Affidavit provided

that a canine trained in narcotics detection indicated that there was an odor of narcotics

in the suspect vehicle. <u>See</u> <u>United States v. Carrazco</u>, 91 F.3d 65, 67 (8th Cir. 1996)

("'A dog's identification of drugs in luggage or in a car provides probable cause that

drugs are present.'") (quoting <u>United States v. Bloomfield</u>, 40 F.3d 910, 919 (8th Cir.

1994)). Based on these facts, a reasonable person could believe there was a fair

probability that contraband could be found in the 1999 Dodge Intrepid, Minnesota

license plate LUAXXX.  As such, defendant's motion to suppress as it relates to the 1999 Dodge Intrepid, Minnesota license plate LUAXXX should be denied.

### E.     August 22, 2006 Search Warrant for a 1999 Dodge Intrepid, Minnesota License Plates TDLXXX

The warrant at issue for the 1999 Dodge Intrepid, Minnesota License Plate TDLXXX, was applied for by Officer Biederman and signed by Hennepin County District Judge Patricia L. Belois, on August 22, 2006, and was executed on the same day.  This warrant sought controlled substances; proceeds from the sale of narcotics; drug paraphernalia; weapons or gun-related paraphernalia; documents and other media that document criminal, narcotic, or gang activity; and evidence that would establish that standing, ownership, or responsibility of an automobile, cell phone, weapons, or other locations; and electronic goods, such as cellular telephones and scales.  See Govt. Ex. 5.  The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- On August 22, 2006 at approximately 7:00 a.m., the FBI executed a search warrant on Thomas Avenue North residence.  During the search, one of the one of the occupants of the residence stated that a few hours prior he or she had seen kilogram quantities of cocaine, some of which was crack cocaine, and a Glock handgun in the Lyndale Avenue North residence.

- The occupant stated that the cocaine located at the Lyndale Avenue North residence belonged to defendant.

- That occupant also stated that defendant often drives a vehicle with Minnesota license Plate TDLXXX.

- Defendant is a known Vice Lord gang member with a criminal history that involved arrest and convictions for weapons and narcotics violations, domestic assault, and felony assault.

- During the morning of August 22, 2006, officers stopped an automobile, Minnesota license plate TACXXX, driven by defendant as it left the Lyndale Avenue North residence

- A search warrant for the Lyndale Avenue North residence had been executed. A large amount of cocaine, several gun magazines consistent with those used by AR15s or M16 .223 caliber rifles, and a Glock handgun were found at the residence.

- In the driveway of the Lyndale Avenue North residence law enforcement found a 1999 Dodge Intrepid, Minnesota license plate TDL XXX. The vehicle was towed to the Minneapolis impound lot where a canine trained in narcotics detection indicated that there was an odor of narcotics in the suspect vehicle.

- A CRI stated that defendant kept narcotics in traps or hides in a Dodge Intrepid with a Minnesota license plate LUAXXX, which is usually kept in the garage of the Lyndale Avenue North residence.

- The CRI made controlled buys from the Lyndale Avenue North residence as a part of a DEA investigation and communicated that he had seen a .223 caliber rifle located at the address.

See Govt. Ex. 5.

The Affidavit set forth facts establishing that law enforcement, pursuant to a search warrant, had discovered a large amount of cocaine, ammunition and a handgun at the Lyndale Avenue North property from which the Dodge Intrepid, Minnesota License Plate TDLXXX, had been towed. The vehicle had been located in the driveway of the residence, and a CRI who had made controlled buys as part of a DEA investigation stated that defendant drove this type of car. In addition, the Affidavit provided that a canine trained in narcotics detection indicated that there was an odor of narcotics in the suspect vehicle. Based on these facts, a reasonable person could believe there was a fair probability that contraband could be found in the 1999 Dodge Intrepid, Minnesota license plate TDLXXX. As such, defendant's motion to suppress as it relates to the 1999 Dodge Intrepid, Minnesota license plate TDLXXX should be denied.

### III.  MOTION TO SUPRESS STATEMENTS AND EVIDENCE OBTAINED AS A RESULT OF THE AUGUST 22, 2006 STOP AND SEIZURE OF DEFENDANT

Defendant has brought a motion to suppress statements taken from him and evidence obtained from his person and the Cadillac he was driving, as the fruits of an illegal stop and arrest by law enforcement officers on the morning of August 22, 2006.[6] According to defendant, "the arrest was conducted on the word of a snitch with no record of reliability and where police failed to corroborate the tip."[7]  See Motion for Suppression of Evidence Seized Pursuant to the Unlawful Seizure of the Person of the Defendant at p. 2.

A warrantless arrest requires probable cause.  See United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003).  "'To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest.'"  Id. (quoting United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003)).  "We will find that probable cause existed at the time of arrest when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested."  Id. (citing same); see also United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (finding that probable cause "'exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy

---

[6]   Defendant's counsel represented at the hearing on the pretrial motions that defendant was not asserting that he was interviewed by law enforcement officers without the required Miranda warning or that any statements made by him were not freely or voluntarily given.

[7]   During the hearing, the parties agreed to rely on the testimony of Investigator Bart Hauge and the affidavits issued in support of the search warrants in this case, Government Exs. 1 through 5, as the factual basis for deciding whether probable cause existed to make a warrantless arrest of defendant.

information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.'") (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)).  Law enforcement officers are not required to have enough evidence to justify a conviction before they make a warrantless arrest, however, a "bare suspicion of criminal activity" is not enough to establish probable cause.  Id. (citing United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991)).  Courts must give law enforcement officers "'substantial latitude in interpreting and drawing inferences from factual circumstances,' but such latitude is not without limits.'"  Id. (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999), quoting United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997)).

This Court finds that based on the totality of the circumstances which occurred prior to the stop of defendant – i.e., his recent sales of drugs to a CRI conducting controlled buys, the in-person tip to police from a cooperating defendant of his or her first-hand observation of a large amount drugs in the Lyndale Avenue North residence that belonged to defendant,[8] information from a CRI that defendant often hid narcotics in a car parked inside the garage of the same residence, and  that officers stopped defendant as he left the Lyndale Avenue North residence – was adequate to establish probable cause to arrest defendant on August 22, 2006.

Second, the Court rejects the argument by defendant that the CRI's information regarding the controlled buy from defendant at the Lyndale Avenue North residence cannot be considered because it was stale.  Several of the affidavits accompanying the

---

[8]     This Court finds without merit any assertion by defendant that the information provided by the occupant of the Thomas Avenue North residence cannot be considered in the determination of whether probable cause existed for the reasons stated forth in Section II.C of this Report and Recommendation, supra.

various search warrants at issue in this case provided that the CRI had made controlled buys at this residence from defendant in conjunction with a DEA investigation. <u>See</u> Govt. Ex. Nos. 3, 4, 5. Investigator Hauge testified that a CRI made controlled buys from the Lyndale Avenue North residence within a month prior to the August 22, 2006 stop.

There is no bright-line test to determine whether a CRI's information is stale. Consequently, the number of days between the stop and the CRI's information is not dispositive of the issue. <u>See</u>, <u>e.g.</u>, <u>United States v. Koelling</u>, 992 F.2d 817, 822 (8th Cir. 1993). The CRI had conducted controlled buys from defendant within a month of the stop, as part of a DEA investigation. This information, together with the information from the cooperating defendant of his or her first-hand observations of a large amount cocaine belonging to defendant in the Lyndale Avenue North residence hours before his arrest, evidences the ongoing nature of the crime, and supports the conclusion that the evidence of the controlled buys was not stale for the purpose of determining whether probable cause existed to make the stop of defendant on August 22, 2006. <u>See</u> <u>United States v. Hartje</u>, 251 F.3d 771, 775 (8th Cir. 2001) (concluding that a drug transaction one month prior to the warrant application was not stale information in light of the ongoing nature of the crime), <u>cert.</u> <u>denied</u>, 534 U.S. 1116 (2002); <u>see</u> <u>also</u> <u>Oropesa</u>, 316 F.3d at 767-68 (evaluating several factors regarding staleness of an informant's information, including whether it was part of an ongoing drug purchasing scheme).

Based on the totality of the circumstances known to police before defendant's stop, this Court finds that defendant's arrest was based on sufficient probable cause,

and that his motion to suppress evidence seized and statements obtained incident to that arrest should be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendant's Motions to Suppress Statements [Docket No. 18] be **DENIED**.

2.     Defendant's Motion to Suppress Evidence [Docket No. 19] be **DENIED**.

3.     Defendant's Motion to Suppress Evidence Seized After Arrest [Docket No. 24] be **DENIED**.

Dated:        November 28, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **December 8, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 8, 2006**.